**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000601
17-OCT-2014
08:47 AM**

NO. CAAP-11-0000601

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


MICHAEL G. SHEEHAN, Appellant-Appellant,
v.
COUNTY OF KAUA'I, COUNTY OF KAUA'I PLANNING COMMISSION,
DOE DEFENDANTS 1-10, Appellees-Appellees,
and
HUI HO'OMALU I KA'AINA, Intervenor-Appellee.


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 10-1-0161)


MEMORANDUM OPINION
(By: Foley, Presiding Judge, Fujise and Ginoza, JJ.)

I. **Introduction**

This secondary appeal stems from Appellees-Appellees
County of Kaua'i and County of Kaua'i Planning Commission's
(collectively, the Planning Commission) revocation of Appellant-
Appellant Michael G. Sheehan's (Sheehan) land use permits due to
violations of enumerated permit conditions. Sheehan appeals from
a Judgment filed on July 21, 2011, in the Circuit Court of the
Fifth Circuit (circuit court).[1] The circuit court entered
judgment against Sheehan and in favor of the Planning Commission
and Intervenor-Appellee Hui Ho'omalu i Ka 'Aina (Hui), affirming
in its entirety the Planning Commission's "Findings of Fact,
Conclusions of Law; Decision and Order" (Commission's FOF/COL)

---

[1]  The Honorable Kathleen N.A. Watanabe presided.

that revoked four permits which authorized Sheehan to own and operate a boatyard at the mouth of the Hanalei River on Kaua'i.

On appeal, Sheehan asserts that the circuit court erred by (1) concluding that Sheehan failed to comply with the conditions of his permits, thus triggering the Planning Commission's authority to revoke; (2) disregarding and ignoring the deposition testimony of Planning Director Ian Costa; (3) concluding that Sheehan's constitutional rights were not violated; (4) affirming the Planning Commission's decision to revoke Sheehan's permits because the decision was contrary to the reliable, probative, and substantial evidence on the whole record; and (5) concluding that Hui had standing to intervene.

For the reasons stated below, we affirm the Judgment.

## II. Background

Sheehan operated a boatyard on property located on the Hanalei River in the County of Kaua'i (Property) pursuant to four permits issued by the Planning Commission in 1987:[2] Special Management Area (SMA) Use Permit (U)87-8, Use Permit U-87-32, Special Permit SP-87-9, and Class IV Zoning Permit Z-IV-87-40 (collectively, the permits).[3] In its order approving the four permits, the Planning Commission enumerated thirteen (13) conditions. Of the thirteen conditions, the following are pertinent for this appeal:

---

[2] The permits were originally issued to Sheehan and his ex-wife, Patricia W. Sheehan. Patricia is no longer involved in the operation or ownership of the boatyard and is not a party to this case.

[3] The circuit court's FOF no. 7 provides

> [A Special Management Area (SMA)] Use Permit was required since the property and proposed development are within the SMA. See ROA at 003236. A Special Permit was required since portions of the property and proposed development are located within the State Land Use Agricultural District and such development and use were not generally permitted in that district. Id. A Use Permit was required since portions of the property are zoned Agricultural and Open Districts and the proposal was not a permitted use in those districts. Id. A Class IV Zoning Permit was required as a procedural requirement for issuance of a Use Permit. Id.

2.    The following conditions be resolved with the Public
      Works Department:
      a.    All construction must conform to the
            requirements of the Flood Control Ordinance.
      . . . .
      c.    Submit plans for preliminary review prior to
            requiring building permit.

. . . .

4.    Approval of these permits shall be on a temporary basis
      and shall be reviewed after a one (1) year period by
      the Planning Commission. Should the [Department of
      Transportation (DOT)] develop a long-range
      solution/facility to accommodate the commercial tour
      boat operations at another location, the Planning
      Commission reserves the right to modify conditions or
      revoke the permits.

5.    No new commercial tour boat operations other than those
      with existing [Department of Land and Natural Resources
      (DLNR)]/DOT revocable permits shall be allowed to use
      this facility.  A listing of occupants of the proposed
      baseyard shall be submitted to the Planning Department
      for verification on a yearly basis.  Any request for
      boat or vessel substitution, additional boats, transfer
      of revocable permits, increase in passenger capacity of
      commercial tour boat operations shall be subject to the
      review of the Planning Commission.

6.    No launching/landing of commercial boats from the river
      side of the project site shall be allowed, unless
      permitted by the State [DOT].

. . . .

8.    The Commission further reserves the right to require
      additional parking stalls on site if deemed necessary.
      At minimum, 100 parking stalls shall be provided
      initially, and need not be paved unless required by the
      Planning Commission after the annual review, or sooner
      if traffic hazards result.

. . . .

12.   The Planning Commission reserves the right to modify or
      revoke these permits should unforeseen problems arise
      or should the applicant violate conditions of this
      approval.

In July 2007, in response to complaints from community members, the Kaua'i County Planning Department (KPD) conducted a field inspection[4] of the Property and issued a "Violation Notice" (July Notice) to Sheehan.  The July Notice noted violations of

_____

    [4] From late 2006 through 2007, the KPD conducted numerous field inspections of the Property.

3

Conditions 2, 5, 6, and 8, the triggering of Condition 4, and recommended that the Planning Commission issue an order to show cause as to why Sheehan's permits should not be modified, amended, or revoked.

Subsequently, the Planning Commission issued an "Order to Show Cause" (OSC) instructing Sheehan to appear at a hearing before the Commission.[5] In the OSC, the Planning Commission described the alleged facts that the KPD contended demonstrate, by a preponderance of the evidence,[6] that Sheehan violated Conditions 2, 5, 6, and 8 of his permits. The OSC provided that

> [In violation of Condition 2, n]o current plans or building permit applications have been submitted, nor zoning or building permits issued for the many noted structures presently existing within the boat baseyard facility. One noted structure is being used as a dwelling. The placement of structures on the boat baseyard property without zoning and building permits for such structures constitutes a violation.
>
> Staff notes that in October 1998, applicant had submitted plans and applications for one of the noted un-permitted storage structures. The [KPD] responded in writing on 12/17/98 that the application was incomplete and required additional information. This requested information was never resubmitted.
>
> . . . .
>
> [In regard to Condition 4, s]ince the Governors [sic] closure of Hanalei Commercial boating permits for access to the Na Pali Coast, the [DOT], Harbors Division and DOT's successor, DLNR, Department of Boating and Ocean Recreation [DBOR], which regulates small boat harbor other than Nawiliwili and Port Allen, have permitted moorings and ramp permits at Kikiaola small boat harbor, Port Allen Harbor and Port Allen small boat harbor for such operators. No permits for commercial moorings or ramp permits within Hanalei Bay have been issued to date other than Temporary Mooring Permits issued to the enjoined commercial boaters, Whitey', Captain Sundown and Ralph Young. With the provided

_____

[5] At the hearing, the KPD was the petitioner who held the burden of demonstrating to the Planning Commission that Sheehan violated the conditions of his permits. See Rules of Practice and Procedures of the Planning Commission (1993) (Planning Commission Rules) §§ 1-6-1, -2, -11(b), --18, -19.

[6] Section 1-6-17(b) of the Planning Commission Rules provides

> (b) Burden of Proof. Except as otherwise provided by law, the party initiating Commission consideration shall have the burden of proof, including the burden of producing evidence as well as the burden of persuasion. The degree or quantum of proof shall be a preponderance of the evidence.

> alternate venues for access to the Napali Coast, the
> Commission has the right to amend, modify or revoke the
> above referenced permits.
>
> . . . .
>
> [In violation of Condition 5, b]oth [current commercial
> operators using the boatyard] and their vessels, along with
> tender vessels, are not of the original identified entities
> permitted thru DOT issued permits . . . .
>
> . . . .
>
> [In violation of Condition 6, t]he identified commercial
> tour boat operators and/or the noted commercial
> boats/vessels operating out of the boat yard do not have
> commercial mooring or ramp permits issued from the managing
> agency DLNR-DBOR. It is also noted that neither the DOT or
> DLNR-DBOR agencies have to date not [sic] extended the
> launch and retrieve corridor to the canoe club facility from
> the Hanalei River mouth.
>
> . . . .
>
> [In regards to Condition 8, f]ield inspections on site and
> review of the approved/permitted plot plan have been
> conducted by the Department. Based on the current site
> conditions and implementation of parking stall size
> standards, the area being provided for the operation of the
> facility provides for much less than the minimum one hundred
> (100) parking stalls required.

The Planning Commission referred the OSC to a hearing officer.

Contested hearings were held on fourteen (14) days between March and June 2009. On April 14, 2010, the hearing officer issued his Proposed Findings of Fact, Conclusions of Law, Recommended Decision and Order[7] (hearing officer's FOF/COL) which concluded that the Planning Department met its burden to demonstrate by a preponderance of the evidence that Sheehan violated Conditions 2, 5, 6, and 8, that Condition 4 was

---

[7] Section 1-6-19(a) of the Planning Commission Rules provides in pertinent part

> 1-6-19 Post Hearing Procedures for Hearing Conducted
> by Hearing Officer. (a) Recommendation of hearing officer:
>
>> (1) Upon completion of taking of the evidence, the
>> hearing officer shall prepare a report setting
>> for [sic] the proposed findings of fact,
>> conclusions of law, the reasons therefore, and a
>> recommended order, and shall submit the report
>> of the proceeding to the Commission.

triggered, and that the Planning Commission could revoke the permits pursuant to Conditions 4 and 12.

The Planning Commission held a hearing to consider the hearing officer's recommendations.[8] At the conclusion of the hearing, the Planning Commission adopted the hearing officer's FOF/COL in its entirety. On June 21, 2010, the Planning Commission issued its FOF/COL, which in pertinent part concluded

> 20. The Planning Commission, based upon reliable probative and substantial evidence on the record, concludes that the Planning Department has met its burden of proving, by a preponderance of the evidence that [Sheehan] has violated Condition 2 of the Permits.
>
> . . . .
>
> 23. The various structures on the property, including a dwelling unit, and storage containers require a building permit. [Sheehan] does not have such building permit or approval from the Commission.
>
> . . . .
>
> 30. The placement of two 12' x 8'6" x 40' mini storage containers and Matson type storage containers, the stock piling of miscellaneous waste material . . . and the construction of a wooden frame shed structure, without prior Planning Commission review and SMA approval, as required by [Hawaii Revised Statutes (HRS) § 205A-29(b) (2001)], has resulted not only in numerous violations of HRS Section 205A-28 [(2001)] and Section [10.0] of [Kauai's SMA Rules], but, by necessity, has resulted in the violation of Condition 2 of the Permit since no required building permits can be issued by the Department of Public Works without prior SMA approval. (HRS Section 205A-29(b))
>
> . . . .
>
> 40. The Planning Commission, based upon reliable, probative and substantial evidence on the record, concludes that the Planning Department has met its burden of proving, by a preponderance of the evidence, that the DOT has developed a long-range solution/facility to accommodate the commercial tour boat operators at another location and that, therefore, the Planning commission [sic] may lawfully exercise its expressly reserved right [under Condition 4] to modify conditions or revoke the permits.

---

[8] Section 1-6-19(e) of the Planning Commission Rules provides in pertinent part

> (e) Commission Action. (1) In the event no statement of exceptions is filed, the Commission may proceed to reverse, modify, or adopt the recommendations of the hearing officer.

. . . .

48. The Planning Commission concludes that based upon reliable, probative and substantial evidence on the record, that the Planning Department has met its burden of proving by a preponderance of the evidence that [Sheehan] violated Condition 5 of the Permits.

. . . .

52. [Sheehan] violated this provision of Condition 5, by allowing Hanalei River Enterprises Inc., and/or Lady Ann Tours, Inc., to use the subject facilities because these companies are not commercial tour boat operations that had been issued DLNR revocable permits to operate out of Hanalei Bay on or before June 24, 1987, when the Sheehan Permits were issued.

. . . .

62. However, even, [sic] assuming that Hanalei River Enterprises Inc. and Lady Ann Tours, Inc. were commercial tour boat operations with existing DLNR/DOT revocable Permits as of June 24, 1987, [Sheehan] would have been required by Condition 5 to submit a request to the Planning Commission for its review and approval in 2007, by requesting substitution, additional boats, or transfer of revocable Permits prior to allowing . . . these vessels to use the subject boatyard facilities.

. . . .

64. The Planning Commission, based upon reliable probative and substantial evidence on the record, concludes that the Planning Department has met its burden of proving by a preponderance of the evidence, that [Sheehan] failed to comply with, and therefore, violated Condition 6 of the Permits.

. . . .

78. The Planning Commission concludes that based upon reliable, probative and substantial evidence on the record, the Planning Department has met its burden of proving by a preponderance of the evidence that [Sheehan] has failed to provide the "minimum, 100 stalls" and therefore violated Condition 8 of the Permits.

. . . .

81. [Sheehan's] contention that Condition 8 merely requires that he provide sufficient "space" for 100 parking stalls . . . is without merit. Condition 8 specifically requires a minimum of "100 parking stalls". The Planning Commission concludes that providing "space and plans for 100 parking stalls" does not satisfy the requirement for actually providing "100 parking stalls".

. . . .

83. The Planning Commission, therefore, concludes that pursuant to its rights expressly reserved in Condition 12 of the subject Permits, and it's [sic] inherent and implied authority as recognized by the Supreme Court of Hawaii in [Morgan v. Planning Dept., Cnty. of Kauai, 104 Hawai'i 173, 86 P.3d 982 (2004)], has the authority to modify or revoke the subject Permits.

Consequently, pursuant to Conditions 4 and 12, the Planning Commission revoked Sheehan's permits "[b]ased on [Sheehan's] continued violations of and non-compliance with Conditions 2, 5, 6 and 8, and the fact that there no longer appears to be a need to continue this boatyard operation[.]"

On July 15, 2010, Sheehan filed a Notice of Appeal to the circuit court. Besides challenging the Planning Commission's revocation of his permits, Sheehan argued that the decision to revoke the permits violated Sheehan's due process and equal protection rights, as well as the KPD's own procedures, and the hearing officer's decision to allow Hui to intervene violated section 1-4-1 of the Rules of Practice and Procedures of the Planning Commission (1993) (Planning Commission Rules).

On May 27, 2011, the circuit court entered its "Findings of Fact, Conclusions of Law and Order" (circuit court's FOF/COL). The circuit court concluded the following:

17. Sheehan has not met his heavy burden of making a convincing showing that the Commission's decision to adopt the Hearings Officer's Recommendations and to revoke the Permits was unjust and unreasonable.

. . . .

19. The Commission's exercise of discretion in revoking the Permits was not arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

. . . .

22. The Hearings Officer's findings of fact, all of which were adopted by the Commission, were not clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.

23. The Commission's decision to revoke the Permits was not clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.

24. This Court is not left with a firm and definite conviction that a mistake has been made.

. . . .

36. The Commission did not violate any constitutional provisions by revoking the Permits.

37. The process involved in revoking the Permits did not violate any constitutional provisions.

. . . .

49. The Hearings Officer, vested with the discretion and authority delegated to him by the Commission, properly permitted the Intervenor to intervene.

The circuit court also concluded that, as a matter of law, Sheehan violated Conditions 2, 5, 6, and 8 of his permits, Condition 4 was triggered, and the Commission properly invoked Condition 12. On July 21, 2011, the circuit court entered its Judgment affirming the Planning Commission's FOF/COL in its entirety.

## III. Discussion

Sheehan contends the circuit court erred by affirming the Planning Commission's decision to revoke the permits, concluding the revocation of the permits did not violate Sheehan's constitutional rights, and concluding the hearing officer's decision to allow Hui to intervene was proper.

However, in his opening brief, Sheehan fails to challenge any of the circuit court's FOFs beyond an assertion that FOF nos. 47-129 do not consider certain deposition testimony. Thus, Sheehan does not challenge the accuracy of the FOFs, just that the court allegedly did not afford proper weight to particular evidence which Sheehan asserts is favorable to him. Sheehan also does not challenge any of the Planning Commission's FOFs beyond a similar argument that the Commission ignored the same evidence allegedly favorable to Sheehan.

Sheehan asserts that he did not need to specifically challenge any FOFs in his opening brief because he challenged some of the hearing officer's FOFs/COLs before the Planning Commission, he incorporated those same arguments into his filings with the circuit court, and the "vast majority" of the circuit court's FOFs merely reiterated the findings of the hearing

9

officer.  Despite Sheehan's contentions, Hawai'i Rules of Appellate Procedure (HRAP) Rule 28(b)(4) provides that "[w]here applicable, each point [of error] shall also include the following: . . . (C) when the point involves a finding or conclusion of the court or agency, either a quotation of the finding or conclusion urged as error or reference to appended findings and conclusions[.]"  Sheehan failed to comply with HRAP Rule 28(b)(4)(C).

While noncompliance with Rule 28 does not always result in waiver of points of error or arguments, Marvin v. Pflueger, 127 Hawai'i 490, 496, 280 P.3d 88, 94 (2012), Sheehan does not indirectly challenge the accuracy of any of the circuit court's or Planning Commission's FOFs.  See id. at 497, 280 P.3d at 95 ("Though defendants do not directly cite FOF 104, they argue throughout that adjudication of [one party's] rights affect [another party's] rights, thus challenging the finding of no prejudice stated in FOF 104." (Footnote omitted)).  Unchallenged FOFs are binding on this court.  Okada Trucking Co. v. Bd. of Water Supply, 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002).

Additionally, Sheehan does not cite or quote any COLs from the circuit court or the Planning Commission in his points of error section as required by HRAP Rule 28(b)(4)(C).  However, if the other sections of the opening brief provide the necessary information, this court affords litigants the opportunity to have their cases heard on the merits where possible.  Marvin, 127 Hawai'i at 496, 280 P.3d at 94.  In the argument section of his opening brief, Sheehan specifically challenges the circuit court's COL nos. 32-34 (regarding Planning Director Costa's declaration), cites to nos. 39 and 44-47 (constitutional challenges) and makes clear reference to nos. 22-30 (violation of conditions), 35-38 (constitutional challenges), and 48-50 (intervenor).  In his reply brief, Sheehan confirms his reference

10

to these COLs.[9]  There is no confusion that Sheehan is challenging these COLs as evidenced by the fact that the Planning Commission and Hui were able to sufficiently provide this court with a thorough response on the merits.  Id. at 497-98, 280 P.3d at 95-96.  We therefore review Sheehan's contentions in this regard.

As a secondary appeal,

[t]he standard of review is one in which this court must determine whether the circuit court was right or wrong in its decision, applying the standards set forth in HRS § 91-14(g) to the agency's decision.  This court's review is further qualified by the principle that the agency's decision carries a presumption of validity and appellant has the heavy burden of making a convincing showing that the decision is invalid because it is unjust and unreasonable in its consequences.

HRS § 91-14(g) (1993) enumerates the standards of review applicable to an agency appeal and provides: Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1) In violation of constitutional or statutory provisions; or

. . . .

(3) Made upon unlawful procedure; or
(4) Affected by other error of law; or
(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

. . . .

A COL that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the conclusion is dependent upon the facts and circumstances of the particular case.  When mixed questions of law and fact are presented, an appellate court must give deference to the agency's expertise and experience in the particular field.  [T]he court should not substitute its own judgment for that of the agency.

---

[9]  In his reply brief, Sheehan identifies circuit court's COL nos. 22-29 and 32-50 as the ones he challenged in his opening brief.

Curtis v. Bd. of Appeals, Cnty. of Hawai'i, 90 Hawai'i 384, 392-93, 978 P.2d 822, 830-31 (1999) (emphasis added) (citations and internal quotation marks omitted).

In addition, "[i]f a finding is not properly attacked, it is binding; and any conclusion which follows from it and is a correct statement of law is valid." Kawamata Farms, Inc. v. United Agri Prods., 86 Hawai'i 214, 252, 948 P.2d 1055, 1093 (1997) (citation and internal quotation marks omitted). As such, any conclusions which flow from the circuit court's and the Planning Commission's unchallenged FOFs, and are correct statements of law, are not in error.

Based on the foregoing considerations, our review is limited to whether Sheehan has demonstrated that the unchallenged FOFs do not support violations of the permit conditions such that the Planning Commission's conclusions and resulting revocation are clearly erroneous; whether Sheehan has demonstrated that the revocation violated Sheehan's constitutional rights; and whether the hearing officer erred in allowing Hui to intervene.[10]

## A. Violation of Conditions and Revocation of Permits

Sheehan contends that the circuit court erred in affirming the Planning Commission's revocation of his permits because he did not violate Conditions 2, 5, 6, and 8 of the permits, Condition 4 was not triggered, and a conclusion to the contrary is counter to the reliable, probative, and substantial evidence on the whole record. Specifically, Sheehan argues that the circuit court, the Planning Commission, and the hearing officer ignored evidence in his favor.

The circuit court's COL nos. 22-30 provide that (1) the hearing officer's findings of fact were not clearly erroneous; (2) the Planning Commission's decision to revoke the permits was not clearly erroneous; (3) the circuit court did not have a firm conviction that a mistake was made; and (4) that as a matter of

---

[10]   The Planning Commission did not issue COLs related to Sheehan's arguments on appeal regarding alleged violations of his constitutional rights or that the hearing officer erred in allowing Hui to intervene.

12

law, Sheehan failed to comply with Conditions 2, 5, 6, and 8, Condition 4 was triggered, and the Planning Commission properly invoked Condition 12.

Condition 12 of the permits reserved "the right to modify or revoke these permits should unforeseen problems arise or should the applicant violate conditions of this approval." Sheehan's lone argument against the application of Condition 12 is that the KPD did not assert unforeseen problems had arisen so as to trigger Condition 12. However, the plain language of Condition 12 provides for the alternative situation where Condition 12 can be used to revoke the permits when other conditions have been violated. Thus, per Condition 12, if any of the Planning Commission's conclusions that Sheehan violated a condition of his permits are not clearly erroneous, the revocation of the permits was proper.

### 1. Planning Director Costa's Deposition

Sheehan's arguments on appeal depend to a large degree on his contention that the circuit court, Planning Commission, and hearing officer completely ignored Planning Director Costa's deposition testimony and instead relied on his oral testimony at the hearing. Sheehan contends it was error for the Planning Commission and hearing officer not to treat Costa's deposition testimony as conclusive evidence which Sheehan alleges establishes he did not violate the conditions of the permits. Yet, in COL nos. 32-34, the circuit court held that

> 32. It would have been improper for the Hearings Officer to have given greater weight to [Planning Director] Costa's deposition testimony, which was hearsay and not subject to cross-examination, than to the testimony of live witnesses, including that of Costa, who were subject to cross-examination at the OSC hearing.

> 33. Sheehan opened the door to potentially inconsistent deposition and hearing testimony by voluntarily calling Costa as a witness at the OSC hearing after he had deposed him prior to the OSC hearing.

> 34. Furthermore, Sheehan, by failing to contest Costa's hearing testimony either during or after the OSC hearing, waived any objection to and his right to challenge on appeal Costa's testimony at the OSC hearing that was at odds with Costa's deposition testimony.

13

Thus, as an initial issue, we must determine whether the circuit court erred in determining the proper weight afforded Costa's deposition. These conclusions of law are not binding on this court and are freely reviewable. <u>Nani Koolau Co. v. K & M Const., Inc.</u>, 5 Haw. App. 137, 141, 681 P.2d 580, 585 (1984).

Sheehan asserts that the circuit court's COL no. 33 is erroneous because he did not assume the risk that Planning Director Costa would provide different testimony than his deposition and Sheehan was forced to call Costa as a witness because the hearing officer ignored the deposition evidence in considering Sheehan's motion to dismiss.[11] Sheehan's contentions are unavailing. If Sheehan wanted to simply read the deposition into testimony at the contested hearing, section 1-6-17(g) of the Planning Commission Rules permitted the admission of prepared testimony. Instead, he called Costa to testify. Costa was subject to questioning by all parties. Planning Commission Rules §§ 1-6-11(b), (i). Sheehan could have impeached his witness with the prior deposition. <u>See</u> Planning Commission Rules §§ 1-6-11(b), (i). COL no. 33 is not in error.

Sheehan contends COL no. 34 is erroneous because he has consistently challenged the hearing officer's decision to ignore Planning Director Costa's deposition testimony. However, besides not objecting to Costa's oral testimony at the contested hearing (he called Costa as a witness) and his failure to impeach Costa, Sheehan did not assert to the Planning Commission that Costa's oral testimony was inadmissible; Sheehan only argued that the deposition testimony was a part of Costa's testimony that must be considered. At the hearing before the Planning Commission on whether to adopt the hearing officer's FOF/COL, Sheehan's counsel stated that "[Planning Director Costa's deposition] is testimony,

---

[11] In its unchallenged FOFs nos. 30-32, the circuit court found that Sheehan deposed Planning Director Costa prior to the contested hearings, only Sheehan's counsel asked questions of Costa at the deposition, Sheehan voluntarily called Costa to testify at the hearings, and Sheehan did not attempt to impeach Costa with his prior deposition testimony during the contested hearings.

it is probative, <u>it gets the same weight as his testimony at the contested case proceeding</u>. And in fact Mr. Costa's testimony doesn't change." (Emphasis added). Thus, any argument that the hearing officer should have ignored Costa's oral testimony because it was at odds with his deposition is waived. COL no. 34 is not error.

Sheehan further argues that Planning Director Costa's deposition amounts to a party admission binding the KPD to a position that Sheehan did not violate the conditions of his permits and Condition 4 had not been triggered, thus precluding the Commission's conclusion otherwise. Sheehan asserts that because the deposition was binding on the KPD, it is not hearsay[12] and it is the KPD's burden to explain any disparity despite the fact that Sheehan requested deposing Costa and called him as a witness.

However, this argument is without merit. First, we note that before the circuit court, Sheehan admitted that the Planning Commission was not bound by the testimony of Planning Director Costa. Sheehan does not dispute COL no. 35 which provides that the trier of fact, in this case the hearing officer, had the discretion to assess the credibility of witnesses and the weight to be given their testimony.

Second, we note that before the Planning Commission, Sheehan asserted that Costa's deposition and oral testimony were consistent. Plus, review of the deposition reveals that Costa specifically denied that he concluded Sheehan was not in violation of the conditions of his permits, merely acknowledged that some of the evidence submitted appeared to show Sheehan complied with certain conditions, and that, in his personal

---

[12] Sheehan challenges the notion in COL no. 32 that Costa was not subject to cross-examination at his deposition, essentially arguing that Sheehan should not be punished because Hui and the KPD chose not to cross-examine. But Sheehan only makes this point to claim that neither Hui nor the Planning Commission can challenge the admissibility of the deposition. The deposition was taken into evidence by the hearing officer and the circuit court did not conclude that Costa's deposition was inadmissible. The admissibility of Costa's deposition is not at issue.

opinion, Condition 4 was not triggered. Even if Costa could bind the KPD, his personal conclusion regarding Condition 4 is not dispositive regarding the propriety of revocation under Condition 12.

As noted above, Sheehan has waived any argument that Planning Director Costa's deposition should be considered at the expense of inconsistent oral testimony. Costa's deposition is not presumptively conclusive and binding on the hearing officer, Planning Commission, or this court. It is not disputed that it was within the hearing officer's and the Planning Commission's discretion to weigh the evidence.

**2. Condition 2**

Sheehan argues that the evidence demonstrates he did not violate Condition 2. Condition 2 provides

> 2. The following conditions be resolved with the Public Works Department:
>
> a. All construction must conform to the requirements of the Flood Control Ordinance.
>
> . . . .
>
> c. Submit plans for preliminary review prior to requiring building permit.

Sheehan contends that Costa's deposition provides that, as written, Condition 2 gave authority to the Public Works Department (PWD) to determine compliance. Sheehan argues that he was in the process of working with the PWD to resolve any relevant issues. Sheehan further asserts that Costa admitted during deposition that a letter from the PWD indicating that Sheehan was in compliance would satisfy Condition 2. However, the entirety of the evidence, even Costa's deposition, demonstrates that Sheehan misinterprets the evidence, and that the Planning Commission's conclusion that Sheehan violated Condition 2 was not clearly erroneous.

The Planning Commission and hearing officer concluded that because Sheehan did not currently have permits for the

structures located on the Property,[13] and could not get building permits without SMA approval, which Sheehan had not sought from the Planning Commission,[14] Sheehan was in violation of Condition 2 and could not be in compliance. Therefore, the focus was on whether, in the twenty years since issuance of the permits, Sheehan had obtained the required building permits, not his new effort to comply.[15]

The text of Condition 2 requires Sheehan to resolve Condition 2a and c with the PWD. However, Planning Director Costa testified at the hearing that Condition 2 requires Sheehan to obtain a building permit and get the required inspections to render the permit process completed to the satisfaction of the KPD, not simply begin the process to obtain building permits. Coastal Zone Management Inspector Leslie Milnes (CZM Inspector Milnes) further testified that all building permit applications require review by the KPD. The Planning Commission noted that

---

[13] Sheehan does not appear to contest that the structures on the Property required building permits.

[14] The Planning Commission concluded that "[t]he placement of two 12' X 8'6" X 40' mini storage containers and Matson type storage containers, the stock piling of miscellaneous waste material, including concrete ruble, lumber and meter scrape and the construction a wooden frame shed structure" constituted "development" within HRS Chapter 205A and the SMA Rules and Regulations of the County of Kaua'i (1993) (SMA Rules) and Sheehan's failure to obtain SMA approval amounted to violations of the SMA Rules. Sheehan asserts that there is no evidence in the record that a second SMA Use Permit was required for the added structures. Notwithstanding Sheehan's contentions and the accuracy of the Planning Commission's COL that the structures constitute "development", the identified structures were not part of the original SMA Use Permit, the County of Kauai's SMA rules require that "[a]ny person proposing a use, activity, or operation" within an SMA file for an assessment as to whether further SMA review is required, SMA Rules §§ 7.1, .2, .3, and it is undisputed Sheehan did not seek approval before placing the structures on the Property. Without the requisite determination, no county department may issue other permits. SMA Rules § 10.0.

[15] Sheehan does not dispute that he was warned in 1993 that he needed to obtain building permits for some of the pertinent structures on the Property, it was not until five years later that Sheehan applied for the proper permits from the PWD, he did not complete the process due to his failure to file sufficient information, and he did not renew pursuit of applicable permits until 2008, after issuance of the OSC.

former-Planning Director Avery Youn (Planning Director Youn)[16] testified that any structure in the flood zone must be cleared by the PWD and then confirmed by the KPD.

Planning Director Costa's deposition testimony does not refute the above. The deposition testimony cited by Sheehan simply acknowledged that the PWD is responsible for deciding whether Sheehan complies, and that documents from the PWD providing that Sheehan was in compliance with Condition 2 would satisfy the condition. However, Costa also testified during his deposition that the KPD was not dependent on the PWD's conclusion to determine if Sheehan complied. Further, Sheehan did not obtain documentation from the PWD that states Sheehan was in compliance. Sheehan argues that a January 23, 2009 letter from Douglas Haigh, Chief of the Building Department of the PWD, states he was in compliance. However, the portion of the letter quoted by Sheehan merely provides that the PWD had not issued a notice of violation because Sheehan had a pending application due to his renewed pursuit of permits. This does not show the PWD determined Sheehan was in compliance with Condition 2.

Sheehan has not demonstrated the Planning Commission's conclusion that Sheehan violated Condition 2 was clearly erroneous.

### 3. Condition 5

Sheehan contends that the evidence demonstrates he did not violate Condition 5. Condition 5 provides

> 5. No new commercial tour boat operations other than those with existing DLNR/DOT revocable permits shall be allowed to use this facility. A listing of occupants of the proposed baseyard shall be submitted to the Planning Department for verification on a yearly basis. Any request for boat or vessel substitution, additional boats, transfer of revocable permits, increase in passenger capacity of commercial tour boat operations shall be subject to the review of the Planning Commission.

---

[16] Youn was the Planning Director at the time Sheehan was issued his permits in 1987.

The Planning Commission concluded that Sheehan violated all three clauses of Condition 5: (1) he allowed new commercial tour boat operations other than those who possessed DLNR/DOT revocable permits at the time of issuance of Sheehan's permits; (2) he failed to provide a list of occupants of the boatyard on a yearly basis; and (3) he failed to obtain approval of any boat or vessel substitution, additional boats, or transfer of permits.

Sheehan asserts that his two current occupants (Bali Hai Charters, Inc. and Lady Ann Tours, Inc.) are entities that had existing DLNR/DOT revocable permits as required by Condition 5, and the current owners obtained the original permits through transfer of the entity. Also, Sheehan contends that the plain language of Condition 5 only requires Sheehan to submit lists of occupants on a yearly basis and inform the Planning Commission of boat changes or permit transfers subject to the Commission's review, not review and approval.

Sheehan contends that Planning Director Costa testified in his deposition that Sheehan provided documents demonstrating compliance with Condition 5 and all that is required to satisfy Condition 5 is review, not approval. However, while Costa acknowledged Condition 5 only states "review" and not "review and approval", Costa testified that when "review" is used, the Commission does not just review for no reason, but to approve. Planning Director Youn further testified that it was his understanding "review" probably means "review and approval." This is in line with the use of the word "request" in Condition 5.

Sheehan also contends that because Costa testified at the hearing that he was not aware of a procedure by which one could file a request for boat or vessel substitution, the Planning Commission cannot hold Sheehan's failure to comply against him. However, the fact remains uncontested that neither Sheehan nor the two occupants attempted to file any documentation that could constitute a request for transfer of permits.

Further, even assuming that the permits could be transferred without approval of a permitting agency, there is no evidence that the permits were transferred in this case. Sheehan cites his 1987 original list of permitted commercial boat operators which identifies Bali Hai Charters and Lady Ann Cruises as permittees. However, Sheehan offers no substantive argument against, and does not challenge, the circuit court's FOFs that:

> 83. According to a list of valid commercial permittees in operation as of September 30, 1988, Peter Favre was the permittee for Bali Hai Charters, and Don and Ann Moses were the permittees for Lady Ann Cruises, Inc. See ROA at 003201-003203.

> 84. The DOT has not issued any permits for commercial vessel operations since October 1, 1998. See ROA at 003201-003203.

> 85. The entity known as Hanalei River Enterprises, dba Bali Hai Charters and owned by Sheehan, was not listed as one of the tour boat operators operating in Hanalei Bay in the late 1980's [sic]. See ROA at 001048.

> . . . .

> 89. The entity known as Lady Ann Tours, Inc., dba Napali Explorer and owned by Mary Kagawa-Garcia, was not listed as one of the tour boat operators operating in Hanalei Bay in the late 1980's [sic]. See ROA at 001047-001048.

Sheehan offers no evidence refuting CZM Inspector Milnes's testimony that the original Bali Hai Charters was involuntary dissolved in 1991, whereas Sheehan's Hanalei River Enterprises was involuntarily dissolved in 2004, reinstated in 2005, and subsequently rebranded as Bali Hai Charters the same year. Further, Sheehan does not explain the difference in names between Lady Ann Cruises (on the first list) and the current occupant, Lady Ann Tours. Notably, Sheehan does not cite to any permits involved in this case. Sheehan has not demonstrated that the Planning Commission's conclusions are clearly erroneous.

Lastly, Sheehan argues that because he submitted lists in 1988 and 1989 that contained hand-written substitutions of permittees, the Planning Commission cannot contend Sheehan is now in violation of Condition 5. However, Sheehan cites no authority for an estoppel or waiver argument. Whether Sheehan's previous

20

lists from nearly twenty years prior were compliant is irrelevant as the Planning Commission determined his current list was not. It is understandable that the Planning Commission would view a list that contains no original permittees as violative of Condition 5.

The Planning Commission did not clearly err in concluding that Sheehan violated Condition 5.

Because the Planning Commission was not clearly erroneous in concluding that Sheehan violated Conditions 2 and 5 of his permits, the Planning Commission did not err in revoking the permits under Condition 12 and the circuit court was correct in so ruling. We need not review Sheehan's remaining arguments regarding alleged violations of other conditions or the triggering of Condition 4.

### B. Constitutional Claims

Sheehan contends that the circuit court erred in concluding that neither the Planning Commission's decision to revoke the permits nor the process utilized violated Sheehan's due process or equal protection rights. "A COL is not binding upon an appellate court and is freely reviewable for its correctness." Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 119, 839 P.2d 10, 28 (1992).

### 1. Due Process

Sheehan asserts his due process rights were violated because he was not given an opportunity to respond before the Planning Commission issued its OSC, the hearing officer denied a purported motion for summary judgment despite the clear deposition testimony of Planning Director Costa,[17] and his permits were modified without notice or hearing. Sheehan cites no legal authority to support his claims, and also fails to provide any citation to constitutional provisions, state or

---

[17] Sheehan cites no authority to support the notion that a motion for summary judgment or a motion to dismiss the OSC is an appropriate motion at a contested hearing before the Planning Commission, or in what circumstances it should be granted.

federal, under which he asserts his rights have been violated, as required by HRAP Rule 28(b)(7) and (8). Failure to comply with HRAP Rule 28 constitutes waiver of the arguments. HRAP Rule 28(b)(7); Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 111, 176 P.3d 91, 110 (2008) (holding that where an appellant fails to properly raise a point on appeal and does not cite to relevant authority, the court can disregard the argument).

Even considering Sheehan's arguments, he has not presented a sufficient due process claim. In COL nos. 44-46, the circuit concluded that Sheehan's due process rights were not violated because he was given ample notice and an opportunity to be meaningfully heard. It is unchallenged that Sheehan received the July Notice, submitted documents in response to the July Notice and the OSC, and participated fully in the contested hearing before the hearing officer and the Planning Commission. Sheehan does not cite any rule or procedure that the Planning Commission has purportedly violated.

Sheehan has not demonstrated that the Planning Commission violated his due process rights.

### 2. Equal Protection

Sheehan contends that both his state and federal equal protection rights were violated because he was treated differently than other permittees. Sheehan cites no legal authority to support his claims as required by HRAP Rule 28(b)(7). Failure to comply with HRAP Rule 28 constitutes waiver of the arguments. HRAP Rule 28(b)(7); Kamaka, 117 Hawai'i at 111, 176 P.3d at 110.

Even considering Sheehan's general equal protection claims, Sheehan has not made a meritorious argument. In COL nos. 38-39, the circuit court concluded that Sheehan did not assert a cognizable equal protection claim and failed to present any specific, credible evidence of actual differences in any decision involving similarly situated permittees. Sheehan acknowledges in his opening brief that he must demonstrate he was treated differently from similarly situated persons. Mahiai v. Suwa, 69

22

Haw. 349, 360-61, 742 P.2d 359, 368 (1987). Sheehan cites only to testimony from Coastal Zone Management Planner Michael Laureta that, in Laureta's opinion, the KPD did not respond to Sheehan's filings in response to the July Notice and the OSC in the same manner as it responded to other permittees. Thus, Sheehan has presented no substantive evidence of other similarly situated persons who were not subject to an OSC for similar violations or whose permits were not revoked in similar circumstances. The circuit court was not erroneous.

Further, Sheehan does not offer a substantive argument against the following COLs

> 40. Even if Sheehan could show some inconsistency, "[a] claim that an administrative agency has made different decisions in different cases, in different years, does not give rise to a claim for relief on equal protection grounds." See Seven Star, Inc. v. United States, 873 F.2d 225, 227 (9th Cir. 1989).

> 41. "[M]unicipal decisions are presumptively constitutional and, therefore, need only be rationally related to a legitimate state interest, unless the distinctive treatment of the party involves either a fundamental right or a suspect classification." Del Monte Dunes v. Monterey, 920 F.2d 1496, 1508 (9th Cir. 1990) (citations omitted).

> 42. Sheehan's equal protection argument is subject to the rational basis review because neither a suspect classification nor a fundamental right is implicated.

> 43. The Commission's decision to revoke the Permits was directly related to the legitimate State interest in protecting Hawaii's shoreline.

Sheehan has not demonstrated the Planning Commission violated his equal protection rights.

### C. Intervenor

Sheehan argues that the circuit court erred in concluding that the hearing officer properly allowed Hui to intervene in the contested hearing. Pursuant to Chapter 4 of the Planning Commission Rules, Hui filed a petition to intervene in the OSC hearing.[18] Sheehan does not dispute that the hearing

---

[18] In its petition, Hui self-identifies that "[o]ur organization was founded in 1985 to address the impacts of illegal activities on the traditional, cultural and subsistence practices of the lawai'a and mahi'ai of moku Halele'a."

officer had the discretion to grant Hui's motion to intervene. Instead, Sheehan solely argues that Hui does not possess the requisite interest in the proceeding to justify intervention.

Sheehan contends that the hearing officer erred because Planning Commission Rules § 1-4-1(a) requires that the intervenor demonstrate that they will be "so directly and immediately affected by the proposed project that their interest in the proceedings is clearly distinguishable from that of the general public[.]" However, Planning Commission Rules § 1-4-1(b) permits "[a]ll other persons" to apply in writing for leave to intervene. Thus, assuming *arguendo* Hui lacked a sufficient interest under subsection (a), Hui was not precluded from petitioning to intervene by the Planning Commission Rules. Sheehan's contention is thus without merit.

**IV. Conclusion**

For the foregoing reasons we affirm the Judgment filed on July 21, 2011, in the Circuit Court of the Fifth Circuit.

DATED: Honolulu, Hawai'i, October 17, 2014.

On the briefs:

Richard Wilson
for Appellant-Appellant

David J. Minkin
Laura S. Lucas
(McCorriston Miller Mukai
 MacKinnon LLP)
for Appellees-Appellees

Harold Bronstein
for Intervenor-Appellee

Presiding Judge

Associate Judge

Associate Judge

24